IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MILTON S. LYNCH, | ) | Civil No. 09-871-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Tim Wilborn
       Wilborn Law Office, P.C.
       P.O. Box 2768
       Oregon City, OR 97045
            Attorney for Plaintiff

       Dwight C. Holton
       U.S. Attorney, District of Oregon
       Adrian L. Brown
       Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Benjamin J. Groebner
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Milton Lynch brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security Disability Insurance Benefits (DIB). For the reasons set out below, the decision of the Commissioner should be reversed, and this action should be remanded to the Social Security Administration (the Agency) for an award of benefits.

**Procedural Background**

Plaintiff filed an application for DIB on January 18, 2004, alleging that he had been disabled since January 31, 2002, because of pain and arthritis in his legs and shoulders. After his application had been denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ John Madden, Jr., on February 2, 2005. In a decision filed on February 22, 2005, ALJ Madden found that plaintiff was not disabled because he could perform his past relevant work as a materials handler. After the Appeals Council denied his request for review, plaintiff sought judicial review of that decision. In an Opinion and Order filed on January 26, 2007, the Honorable Michael Mosman reversed the Commissioner's decision and remanded this action to the Agency for specified further proceedings.

FINDINGS AND RECOMMENDATION - 2

In an Order dated November 28, 2007, the Appeals Council remanded this case to

ALJ Madden, who held a second hearing on December 2, 2008.  On December 23, 2008,

ALJ Madden issued a second decision finding that plaintiff was not disabled.  That decision

became the final decision of the Commissioner on June 8, 2009, when the Appeals Council

denied plaintiff's timely request for review.  Plaintiff challenges that decision in the present

action.


**Factual Background**

Plaintiff was born on August 29, 1945.  He was 56 years old at the time of the alleged

onset of disability in 2002, and was 63 years old at the time of the second hearing before the

ALJ.  He obtained a GED and had relevant work experience as what a Vocational Expert (VE)

testified was a "support equipment asset manager" position according to the Dictionary of

Occupational Titles (DOT).  He also had work experience as a custodian and a school bus

driver.


**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in

substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## **Medical Record**

Since 2001, plaintiff has been treated at a Veterans Administration (VA) medical center for pain in his feet, knees, and left shoulder.  During a visit on June 8, 2001, VA physical therapists noted that plaintiff had difficulty dressing himself because he had trouble elevating his left arm.  Plaintiff had pain in his left ankle when walking, and a cane was prescribed.  X-rays taken on August 2, 2001, showed degenerative spurring at the insertion of plaintiff's Achilles tendon and mild degenerative changes in plaintiff's left knee.  Plaintiff had pain when rising from a seated position and when reaching overhead.

During August, 2001, plaintiff was treated at the VA for alcoholism, osteoarthritis, plantar arthritis, and COPD.  He was also treated for pain in his knees and shoulder.  Following an examination conducted on August 29, 2001, Dr. Matthews noted that plaintiff had undergone surgery on his left ankle as a child following repetitive spraining.  Plaintiff reported continued knee pain, chronic pain in his left shoulder, and weakness and fatigue in his lower legs.  Dr. Matthews noted that plaintiff had a slight limp caused by a problem with his left ankle, and had moderate pain with range of motion and decreased rotator cuff function in his left shoulder.  Dr. Matthews noted tenderness in the bicipital groove of plaintiff's left shoulder,

and characterized plaintiff's patellar pain and crepitation as "rather severe bilaterally." He also noted that plaintiff had lateral joint line tenderness in both knees, and mild lateral tenderness and some swelling in the left ankle. Dr. Matthews diagnosed chronic rotator cuff impingement and tendinitis in the left shoulder, chronic synovitis and symptomatic patella chondromalacia in both knees, chronic synovitis secondary to easy spraining secondary to ligament laxity in the left ankle, and atrophy in the lower legs secondary to chronic knee pain.

Plaintiff was examined by Dr. Solomon on March 30, 2004. Dr. Solomon noted that plaintiff experienced continued left ankle pain, pain in both knees, and left shoulder pain. Plaintiff had particular difficulty reaching overhead with his left arm. Plaintiff reported that he had difficulty standing or walking for more than 15 to 20 minutes at a time, had difficulty lifting more than 10 pounds because of pain in his knees and ankles, and had difficulty doing light housework. Dr. Solomon opined that plaintiff's physical examination was "consistent with" plaintiff's complaints. He noted that plaintiff had slight atrophy in his lower left leg and walked with a limp on his left side. Dr. Solomon noted a positive impingement maneuver, mostly anteriorly on the left side, and mild tenderness and crepitus of the acromioclavicular joint on the left. He also reported tenderness in the medial aspect of plaintiff's left ankle ligament and slight laxity on the lateral side of plaintiff's left knee. Plaintiff's patellofemoral joints exhibited crepitus. Dr. Solomon opined that plaintiff had patellofemoral joint pain in both knees, likely had anterior impingement in the left shoulder, and showed evidence of rotator cuff tendinitis and subdeltoid bursitis. He noted atrophy in plaintiff's lower left extremity, and opined that plaintiff had laxity in the left ankle with pain and a history of chronic multiple sprains.

FINDINGS AND RECOMMENDATION - 6

In January, 2006, plaintiff was treated for continued pain in his left ankle and both knees. On January 27, 2006, an occupational therapist noted that plaintiff had calcific tendinitis in his left arm.

On May 21, 2007, Dr. Allen noted that plaintiff continued to take medication for leg and back pain.

### **Plaintiff's Testimony**

Plaintiff testified as follows at the first hearing:

Plaintiff was hired to work as a school bus driver in 2001, but did not actually begin working because of pain he experienced when he inspected the engine compartment and when he turned the steering wheel. He had stopped working as a part-time janitor earlier because carrying objects caused him pain, and lifting garbage into a bin was too painful. Plaintiff had pain in his left shoulder, left ankle, and both knees. He was not sure if he could use his left arm repetitively, but had little strength in it. Reaching overhead or twisting with his left arm caused pain. Plaintiff could walk about one block before he was stopped by pain in his knees and left ankle. He had to change positions every 15 to 20 minutes, and could sit for 30 to 40 minutes. Plaintiff could lift 20 pounds, but could not carry that weight far. In performing his previous work as a materials planner, plaintiff had been required to move around the plant, "get up on racks and count parts," and "move things around." The position had required ladder climbing overhead work.

During the second hearing, plaintiff testified that this previous work was more accurately characterized as a "support equipment asset manager" as that position was described

by the VE.  Plaintiff testified that, in this position, he had been required to climb ladders for approximately one half hour during an eight-hour work day.

## VE's Testimony

At the first hearing, VE Jones classified plaintiff's warehouse work as a "materials planner, production control" position, DOT number 019.167-010.  At the second hearing, VE Jones testified that plaintiff's work was more accurately classified as a "support equipment, asset manager" position, DOT 222.387-026.  The VE testified that this job was classified as medium level work by the DOT, but was light work as performed by plaintiff.

The ALJ posed a hypothetical for the VE describing an individual with plaintiff's education and experience, who was limited to light work with occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds.  The individual described could lift and carry 20 pounds occasionally, and 10 pounds frequently, and could stand and walk about six hours and sit about six hours in an eight-hour work day.  In addition, the described individual could not perform "extreme" reaching, which the ALJ described as "the extreme of overhead, the extreme of lateral, the extreme of cross."

The VE testified that the individual described in the ALJ's hypothetical could not perform plaintiff's past work as a bus driver or janitor, or work as an asset manager as that position was described in the DOT, but could perform that work as plaintiff had performed it.[1]

_____

[1]The VE's assertion that the described individual could perform the work as plaintiff had performed it was clearly incorrect.  The ALJ's hypothetical precluded climbing of ladders, and the evidence in the administrative record supports only the conclusion that plaintiff climbed ladders when he worked in the asset manager position.

FINDINGS AND RECOMMENDATION - 8

In response to questioning by plaintiff's attorney, the VE testified that the inability to climb ladders would eliminate the asset management position.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity between the date of the alleged onset of his disability and the expiration of his insured status on September 30, 2006.

At the second step, the ALJ found that plaintiff's severe impairments included mild arthritis in both knees, ankle laxity, a history of alcohol abuse, and chronic right shoulder impingement.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment in the "listings."

The ALJ next assessed plaintiff's residual functional capacity through his date last insured. He determined that plaintiff could perform light work, limited to occasional balancing, stooping, kneeling, crouching, crawling, and stair climbing, and limited reaching with his left arm. In the RFC set out in his decision, unlike that in the hypothetical he posed to the VE during plaintiff's second hearing, the ALJ did not specifically address plaintiff's capacity to climb ladders. In the hypothetical he set out in the hearing, the ALJ stated that "[c]limbing of ramps and stairs is occasional, but climbing of ladders, ropes and scaffolds is never."

At the fourth step, the ALJ found that plaintiff could perform his past relevant work as a support equipment asset manager, as that position is "generally performed." Accordingly, he

found that plaintiff was not disabled within the meaning of the Act at any time between the date of the alleged onset of his disability and his date last insured.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ's finding that he could perform his past relevant work is not supported by substantial evidence, that the ALJ improperly rejected the opinions of his treating and examining physicians, and that the ALJ improperly rejected his testimony and the statements of a lay witness.  I agree with the first of these contentions, and conclude that the action should be remanded for an award of benefits.  In light of that conclusion, my discussion of the remainder of plaintiff's arguments will be brief.


1. ALJ's finding at step four

As noted above, the ALJ concluded that plaintiff could perform his past work as a support equipment asset manager "as generally performed," and accordingly concluded that plaintiff was not disabled within the meaning of the Act.  The conclusion that plaintiff could perform his past work, either as he had performed it or "as generally performed," is clearly erroneous.  In his RFC determination, the ALJ found that plaintiff could perform a reduced range of "light" work.  However, the DOT states that the asset manager position requires "medium" level work as generally performed, and the VE specifically testified that an individual with plaintiff's RFC could not perform that job "[a]s the DOT describes it . . . ." Though the VE initially testified that an individual with plaintiff's RFC could perform the asset manager position as plaintiff had performed it, he testified that an individual who could not climb ladders could not do the work as it had been performed by plaintiff.  Because the ALJ's RFC precluded the climbing of ladders, there is no evidence for the conclusion that plaintiff could perform the position either as described by the DOT, which required an ability to

perform medium level work which plaintiff lacked, or as actually performed, which required ladder climbing.

The Commissioner acknowledges that plaintiff could not perform the asset manager position as it is "generally performed" according to the DOT.  He contends, however, that the ALJ's assertion that plaintiff could perform that work as generally performed was a "typographical error," and that "the ALJ presumably intended to find that [plaintiff] could perform his past relevant work as actually performed, rather than as generally performed."  This argument clearly fails, because there is no support for the conclusion that plaintiff could perform the work as he had previously performed it.  The ALJ's RFC precluded climbing ladders, and the record establishes that plaintiff was required to climb ladders when he previously performed the work.  Though the VE initially testified that an individual with plaintiff's RFC could perform the assert manager position as plaintiff had performed it, she testified that the inability to climb ladders would eliminate the job as performed.

In the absence of evidence that plaintiff could perform his past work as an asset manager, there is no evidence that plaintiff could perform any of his past relevant work.  The question then is whether this action should be remanded for an award of benefits, or for further proceedings to determine, at step five, whether plaintiff could perform other work that exists in substantial numbers in the national economy.  Plaintiff contends that his age, inability to perform his past relevant work, education, work experience, lack of transferable skills, and limitation to light work render him disabled "pursuant to 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 202.06."  This argument appears to be well taken.  Though the Commissioner also correctly notes that courts generally do not "render final judgment in an area of administrative law on an issue not decided by the administrative agency," it appears that

FINDINGS AND RECOMMENDATION - 12

the determination that plaintiff is disabled if he cannot perform his past relevant work is not so much an administrative "decision" as an inevitable conclusion under the regulation cited by plaintiff, which is part of the Medical-Vocational Guidelines otherwise known as the "grids."

The Commissioner has cited, and my review of the relevant portion of the "grids" has disclosed, no basis for concluding that plaintiff is not disabled if he cannot perform any of his past relevant work.  Under the provision cited by plaintiff, an individual of plaintiff's age, education, and experience, who is limited to light work and cannot perform his past relevant work, is classified as disabled.  Under these circumstances, where it appears that the agency on remand could only conclude that plaintiff is disabled, I conclude that remand for an award of benefits is appropriate.  Certainly, a determination that an individual is disabled according to relevant regulations is ordinarily for the agency, and not for the court.  However, in analogous situations, the court has discretion to remand for an award of benefits rather than remand for further proceedings when no outstanding issues need to be resolved before a determination of disability can be made and it is clear that an ALJ would be required to find the claimant disabled if an ALJ had not erred.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985) (reviewing court should remand for award of benefits if ALJ improperly rejected evidence, no outstanding issues require resolution before disability can be determined, and ALJ crediting improperly rejected evidence would be required to find claimant disabled).  Here, any determination that plaintiff could perform his past relevant asset manager work, either as performed or as is generally performed, was not supported by substantial evidence, and an ALJ who properly reached that conclusion would have been required to find plaintiff disabled under the "grids."  Remand for further proceedings would only further delay an application for benefits that has been pending for more than six years.

FINDINGS AND RECOMMENDATION - 13

2. Other Issues

        My conclusion that this action should be remanded for an award of benefits for the

reasons set out above makes it unnecessary to address the balance of plaintiff's arguments.

Nevertheless, I will very briefly address the remaining issues in order to create a full record

for review.


a. Plaintiff's "limited" ability to reach with left arm

        Plaintiff contends that the ALJ's RFC was deficient because the ALJ found that he had

"limited" ability to reach with his left arm, but "did not specify how limited Plaintiff's ability to

reach would be."  He contends that the description of his reaching limitation is too vague, and

that, without a more specific finding, "it is impossible to determine whether Plaintiff can reach

occasionally."

        I disagree.  In describing the limitation on plaintiff's ability to reach during the second

hearing, the ALJ clarified that the limitation applied to the ability to the extremes of overhead,

lateral, and cross motions.  This description was sufficient for a VE to form an opinion as to

plaintiff's ability to perform certain work.


b. Rejection of opinions of examining doctors

        Plaintiff told Dr. Solomon, an examining physician, that he had difficulty reaching

overhead with his left arm, had difficulty standing for more than 15 to 20 minutes at a time, had

difficulty walking more than 15 to 20 minutes at a time, and had difficulty lifting more than 10

pounds.  Based upon his examination, Dr. Solomon opined that plaintiff's limitations were

consistent with this description–a description which would have limited plaintiff to sedentary

FINDINGS AND RECOMMENDATION - 14

work.  Dr. Solomon's findings were consistent with those of Dr. Mathews, the only other examining physician in the record.

The ALJ concluded that Dr. Solomon's examination of plaintiff was "largely unremarkable," and asserted that this examining physician had set out no limitations on plaintiff's ability to stand and walk.  In determining plaintiff's RFC, the ALJ did not incorporate plaintiff's limitations endorsed by Dr. Solomon, but instead relied on a non-examining doctor's opinion that plaintiff was not limited to sedentary work.

Plaintiff contends that the ALJ provided legally insufficient reasons for rejecting Dr. Solomon's opinion in favor of that of a reviewing doctor.  I agree.  The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting an examining physician's opinion that is contradicted by another physician.  Andres v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ here did not recognize that Dr. Solomon had opined that plaintiff had accurately described his limitations, and adopted the findings of a non-examining physician that was inconsistent with the findings of both examining physicians of record.  The ALJ did not provide either clear and convincing reasons, or specific and legitimate reasons that were supported by the record, for doing so.


c. Rejection of plaintiff's testimony

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

In reaching his conclusions as to plaintiff's RFC in his second decision, the ALJ asserted that Judge Mosman had affirmed his conclusion, set out in the first decision, that plaintiff was not wholly credible. The Commissioner now concedes that this assertion "arguably overstated the District Court's finding with respect to credibility," but asserts that the Court "did explicitly affirm the reasons provided" by the ALJ in support of the earlier credibility determination.

A careful reading of Judge Mosman's opinion supports neither the ALJ's nor the Commissioner's position. In light of his decision to remand the action on other grounds, Judge Mosman did not address the ALJ's credibility determination in any detail, and did not state any conclusions as to the correctness of that determination. Instead, he simply stated that, on remand, the ALJ should reassess plaintiff's credibility in light of any additional findings he made "concerning the state of the medical record."

Because plaintiff's impairments could clearly cause some degree of the symptoms alleged, and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Plaintiff's contention that the ALJ did not provide such support for his credibility determination is well taken. In support of his

FINDINGS AND RECOMMENDATION - 16

credibility determination, the ALJ asserted that plaintiff had not participated in physical therapy, that the medical evidence was "minimal" and that the medical record did not support plaintiff's complaints, that plaintiff engaged in "work activity" after the alleged onset of his disability, that plaintiff's earlier part-time work as a janitor and his plan to work as a bus driver indicated a greater physical capacity than plaintiff alleged, that plaintiff's descriptions of his past work were inconsistent with his earlier descriptions of the work and with the job description for a "logistics engineer" in the DOT, and that plaintiff's use of a cane was "volitional."

These reasons are not clear and convincing. There is no evidence that plaintiff engaged in substantial gainful activity after the alleged onset of his disability, and the ALJ explicitly found that he had not done so. Accordingly, there is no evidence that plaintiff engaged in "work activity" that was inconsistent with his description of his symptoms and limitations. Plaintiff did participate in physical therapy, and the cane that he used was prescribed by a physical therapist. Contrary to the ALJ's assertions, plaintiff's descriptions of his previous work were consistent, and any inconsistency between those descriptions and the description of the "logistics engineer" position in the DOT is irrelevant, because at the second hearing, the VE testified that a different job classification more accurately described plaintiff's prior work.

d. Rejection of statements of lay witness

John Marvick, a friend of plaintiff, completed a questionnaire setting out his observations concerning plaintiff's ability to engage in certain activities. Marvick noted that plaintiff walks with a cane, estimated that plaintiff could walk two blocks without resting, and

reported that plaintiff was quite limited in his ability to sleep, do yard work, lift, squat, bend, stand, reach, walk, kneel, see, climb stairs, and complete tasks.

The ALJ found that Marvick's observations could not be accepted to the extent that they implied that plaintiff was "wholly disabled."  He added that these statements, at most, reflected plaintiff's "chosen presentation to others."

An ALJ must take into account lay testimony concerning a claimant's symptoms, unless he "gives reasons that are germane . . . for doing so."  The ALJ's reasons here do not satisfy that requirement.  The ALJ simply discredited the lay witnesses's statements without providing any reason to doubt his observations, other than the implication that plaintiff had chosen to present himself in false manner.  In the absence of any evidence in the record supporting the conclusion that plaintiff was a malingerer, there is no basis for concluding that plaintiff's presentation to others was false.

## Conclusion

For the reasons set out above, a judgment should be entered reversing the Commissioner's decision, and remanding this action to the agency for an award of benefits.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 4, 2010.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of September, 2010.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge